### EDWARD THURBER *versus* WILLIAM BLACKBOURNE.

*Nil debet* is a good plea to an action of debt on a judgment rendered in a court of record of another State, if it do not appear from the copy of the record that the defendant had notice of the suit.

THIS was an action of debt on a judgment recovered in the court of common pleas for the county of *Providence*, in the state of *Rhode Island.*

The defendant pleaded *nil debet*, to which plea the plaintiff demurred.

BELL, J. The sufficiency or insufficiency of this plea depends upon the question whether this judgment, in the form in which it is presented, is or is not to be regarded as a specialty.

The judgments of courts of records are, by the common law, considered either as domestick or foreign judgments. A domestick judgment is the judgment of a court of record

of the same jurisdiction.    A copy of the record of a domestick judgment duly authenticated affords incontrovertible evidence of a specialty debt.    It imports such absolute verity that it can be denied only by a denial of the existence of the record on which it is supposed to be founded.    A foreign judgment is a judgment rendered in a court of record of another jurisdiction.    It affords only *prima facie evidence* of a simple contract debt.

The several states in the union are, as to their judiciary proceedings, unconnected jurisdictions.    The judgments of the courts of record of one State, when the subjects of suits in the courts of another, must, therefore, independent of the constitution and laws of the *United States, be regarded merely as* foreign judgments.

Has the constitution and laws of the *United States* given to all or any such judgments the force and effect of domestick judgments?

It is provided, by the first section of the fourth article of the constitution of the *United States*, that full faith and credit shall be given in each state to the publick acts, records and judicial proceedings of every other state, and the congress may by general laws prescribe the manner in which such acts, records and judicial proceedings shall be proved, and the effect thereof.    The act of congress of May, 1790, after providing the mode in which such acts, records and judicial proceedings shall be authenticated, declares that the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the *United States* as they have by law or usage in the courts of the state where the said records are taken.

The constitution of the *United States* expressly provides for the admissibility of such records as evidence, but does not direct the mode in which they should be authenticated, nor does it declare what shall be the effect of the evidence when admitted.    This is evident not only from the indefinite manner in which they are spoken of in this article as evidence, but from the express authority given by this article

to congress to direct the manner in which they should be authenticated, and the effect thereof. This provision would have been nugatory and absurd if the constitution itself had either prescribed the form of the authentication of the record, or declared its effect as evidence.

The act of May, 1790, seems intended to be a complete execution of this power vested in congress by the 4th article of the constitution. It directs the form of authentication of such records, and adds, that when so authenticated they shall have such faith and credit given to them in every court within the *United States* as they have by law or usage in the courts of the state whence the said records are taken. The last clause of this sentence, if it have any meaning, must relate solely to the effect to be produced by such records as evidence.

This member of the sentence commences with a recognition of the record as perfectly authenticated, " when so authenticated it shall have such faith and credit," &c.

The faith and credit spoken of in the act is, therefore, the faith and credit to be given to admissible evidence presented in the form prescribed by law.

This faith and credit is to be the same which the record would receive in the state where the judgment was rendered. In every state the judgments of its own courts of record afford incontrovertible evidence of the specialty debt, and can be denied only by the plea of *nul tiel* record. Such judgments, when sued in the courts of another state, have not the same faith and credit given to them as they would have in the courts of the state where rendered, unless they are received as incontrovertible evidence of a specialty debt; if they are so considered, they differ in no respect from a domestick judgment.

This seems to be the natural construction of the language of the statute of 1790, and this construction ought not to be departed from unless it clearly appear from the consequences resulting from it, that the legislature could not have intended to use the words in their common and natural signification.

It is contended that such consequences do result from this construction as show that the legislature could not have annexed this meaning to the words. It is supposed that courts by adopting this construction are bound to give conclusive effect to every judgment of a court of record of another state, duly authenticated, even though the person against whom such judgment was rendered had no notice of the suit.

If such consequences necessarily resulted from our construction of the act of 1790, it must follow that the legislature could not have used the words in the sense we have supposed ; for it cannot be presumed that the legislature intended to preclude a judgment debtor from contesting the validity of a judgment obtained against him in another state without notice. Such judgments are rendered in violation of the first principles of justice, which certainly require in civil, as well as criminal cases, that a party should not be condemned without, at least, having an opportunity of being heard. Were judgments so obtained in one State, to have the effect of domestick judgments in every other State, the most mischievous consequences would ensue :—But these supposed consequences do not result from the construction we give to the words of the act of May, 1790.

" The words, " records and judicial proceedings," used in that act, are words of definite meaning at common law, and by settled legal rules in the construction of statutes they are to have the same meaning affixed to them when used in this statute. The common law never recognized judicial proceedings as foreign judgments, unless rendered by a court of record upon personal notice given to the defendant, on his appearance to the action.

Without these requisites, such foreign judgment is a mere nullity, and does not afford even *prima facie* evidence of a debt.—3 *Wilson* 303. *Fisher* vs. *Lane.*—9 *East.* 192. *Buchanan* vs. *Rucker.*

The judicial proceedings or judgments contemplated by the act of 1790, were therefore not judgments rendered with-

out notice to the defendant, or appearance to the action, but judgments which were recognized and enforced at common law as foreign judgments. Judgments of the courts of record of one state, rendered without notice or appearance of the defendant, when sued in the courts of another state are therefore not affected by the statute of 1790, but remain as at common law, mere nullities, unless within the jurisdiction where they were rendered.

The record in this case affords no evidence that the defendant had personal notice of the suit, or appeared to the action in the court in which judgment was rendered, and these are facts which we are not to presume ; they should appear upon the record.

This judgment, therefore, in the form in which it is presented to us, cannot be regarded as a specialty, and to all actions of debt not founded on a specialty, *nil debet* is a good plea.

Judgment that the defendant's plea is good, &c.

*Pitman* for the plaintiff.

*Hale* for the defendant.