## TAYLOR *v.* BARRON, ADM'R.

A judgment of an inferior tribunal, in another State, which does not admit of authentication under the law of the United States, is here, as at common law, *prima facie* evidence only, and not conclusive. Where it is alleged, in pleading, that by the law of another State, a decision of commissioners, appointed to audit the claims against the estate of a person deceased, is of itself a judgment, it cannot be authenticated as a judgment under the laws of the United States; and a plea of the disallowance of a claim by such commissioners, is not a bar here.

A judgment upon the same claim, rendered in another State, is not conclusive here, unless it appears that the case was there determined upon its merits.

IN ASSUMPSIT, the defendant pleaded two pleas, as follows :

"Sullivan, ss. Court of Common Pleas.

By leave of court, as of August term, 1853, Asa Taylor, appellant *v.* Asa T. Barron, administrator, appellee. And now at this day, that is to say, on the third Tuesday of August, A. D. 1853, until which day the plea aforesaid was last continued, comes the said plaintiff, by his attorney, and the said defendant saith that the said plaintiff ought not further to have or maintain his aforesaid action thereof against him, because, he says, that at a court of probate, held at Woodstock, within and for the district of Hartford, in the State of Vermont, after the death of the said Abel, to wit, on the third day of February, A. D. 1851, letters of administration of the goods and estate of said Abel, within the State of Vermont, were duly granted to one Shubael Russ.

And the said Asa T. Barron further saith, that at a court of probate, held at Woodstock, within and for said district of Hartford, on the third day of February, 1851, George E. Wales and John L. Lovering, both of Hartford, in the said district, were appointed commissioners to receive, examine and adjust all claims and demands of all persons against the said Abel Barron, and all claims of the deceased, exhibited in offset to the claims of the creditors; that said commissioners were directed to be sworn, and to appoint convenient times and places when and where they would meet for the purpose of examining and allowing the claims, and within sixty days from the time of their appointment, to give notice of the times and places of their meeting, and of the time limited to the creditors to present their claims, by posting a notification thereof in four public places in the county of Windsor, to wit, at the post office at White River Junction, at the post office at Hartford, at the post office at West Hartford, and the post office at Quechee Village, all in Hartford, and by publishing the same three

weeks, successively, in the Woodstock Mercury, a newspaper printed at Woodstock aforesaid; and six months were allowed for the creditors to present their claims to the said commissioners for examination and allowance, and said commissioners were directed, at the expiration of said time limited, or as soon thereafter as they should have time to complete the hearing of the claims presented, to make report of their doings to said probate court, embracing lists of all the claims presented, or exhibited in offset, and stating how much was allowed, and how much was disallowed, and the final balance, whether in favor or against the estate, and particularly to state the manner in which notice was given to the claimants.

And the said Asa T. Barron says that afterwards, and after the last continuance of the plea aforesaid, to wit, on the seventh day of April, A. D. 1852, at a court of probate, held at said Woodstock, within and for said district, the said commissioners made report of their doings to said court, and returned their warrant with a certificate that they had been duly sworn, and in their return particularly stated the manner in which notice was given to the claimants, and in and by said report stated that they had disallowed a claim of said Asa Taylor, for the sum of $3503; and said report was by said court duly accepted and ordered to be recorded, all which, by the records now remaining in said court, fully appears, and copies of which records, duly authenticated, the said Asa here in court produces.

And the said Barron avers that no appeal was by the said Taylor, within twenty days after said report was so returned and accepted by said probate court, or at any other time, taken or prayed for from the said decision and report of said commissioners, or from the decree of said court accepting said report, and ordering the same to be recorded, but that said decision and report of said commissioners, and said decree of the probate court thereon, are in full force as to said claim, and in no way in the least annulled or made void.

And the said Asa T. Barron further saith that, by the statute law of the State of Vermont, it is provided as follows, viz.:

' A probate court, held by a judge appointed according to the provisions of the constitution, shall be continued in each probate district.

Such court shall be a court of record and have a seal, shall appoint a register, and may remove him at pleasure.

The register shall be sworn, and shall perform the duties of clerk of the court, shall keep a true and fair record of each order, sentence and decree of the court, and all other things proper to be recorded, and on the legal fees being paid, shall give true and attested copies of the files, records, and proceedings of the court.

All copies, so attested, shall be legal evidence in all the courts of law and equity in this State, and certificates of probate, of administration, and guardianship, attested by the register, may be given in evidence, and have the same effect as any probate, letter of administration or letter of guardianship, made out in due form of law.

The register shall also make out and sign all letters of administration and of guardianship, and all warrants, or other processes or written instruments issuing from the probate court.

The probate court shall have jurisdiction of the probate of wills, of the settlement of testate and intestate estates, of the appointment of guardians, and of the powers, duties, and rights of guardians and wards.

If any person shall die, being an inhabitant of the State at the time of his death, his will shall be proved, or letters of administration on his estate shall be granted, and his estate settled in the probate court of the district, in which he shall have resided at the time of his death.

If the person dying shall reside out of this State, at the time of his death, his will shall be allowed and recorded, and letters testamentary or of administration shall be grant-

ed in the probate court of any district in which he had estate.

When any probate court shall have first taken cognizance of the settlement of the estate of any deceased person, as mentioned in the two preceding sections, such court shall have jurisdiction of the disposition and settlement of all the estate of such deceased person, to the exclusion of all other probate courts.

The jurisdiction assumed by any probate court, in any case, so far as depends on the place of residence of any person, or the location of his estate, shall not be contested in any suit or proceeding whatever, except in an appeal from the probate court in the original case, or where the want of jurisdiction appears on the record.

Where letters testamentary or of administration shall be granted by any probate court, it shall be the duty of such court to appoint two or more suitable persons to be commissioners, to receive, examine and adjust all claims and demands of all persons against the deceased, except in the following cases:

1. Where it shall appear that there are no debts existing against such deceased person.

2. Where the value of the whole estate shall not exceed the sum of one hundred and fifty dollars, and shall be assigned for the support of the widow and children, as provided by law; in which case such assignment shall be deemed a full and final administration, and a bar to all claims against the estate.

When such commissioners shall be appointed, it shall be their duty to appoint convenient times and places when they will meet for the purpose of examining and allowing the claims, and within sixty days of the time of their appointment, they shall give notice of the times and places of their meeting, and of the time limited to creditors to present their claims, by posting a notification thereof in four public places in the same county, and by publishing the same for

three weeks, successively, in some newspaper printed in the State, and in such other manner as the court shall direct.

The court, in the commission issued to the commissioners, shall designate the paper in which such notice shall be published, and the number of places in the several towns in which it shall be required to be posted, and any other mode of notifying which the court shall direct.

If any commissioner, appointed by the probate court, shall at any time die, remove out of this State, refuse, or become in any other way incapacitated to perform the duties of his appointment, the court may appoint another commissioner in his place, and no further notice shall be required of the meetings of the commissioners in consequence of such appointment.

The probate court shall allow such time as the circumstances of the case shall require, for the creditors to present their claims to the commissioners for examination and allowance, which time shall not, in the first instance, exceed eighteen months, or be less than six months, and the time allowed shall be stated in the commission.

When a creditor, against whom the deceased had claims, shall present a claim to the commissioners, the executor or administrator shall exhibit the claims of the deceased in offset to the claims of the creditor, and the commissioners shall ascertain and allow the balance against or in favor of the estate, as they shall find the same to be.

The commissioners shall be sworn, and shall be authorized to administer oaths to parties and witnesses, when the same shall be required or proper for the investigation and trial of the questions before them.

At the expiration of the time limited, or as soon thereafter as they shall have time to complete the hearing of the claims presented, the commissioners shall make report of their doings to the probate court, embracing lists of all the claims presented or exhibited in offset, and stating how much was allowed and how much disallowed, together with

the final balance, whether in favor of the creditor or the estate, and the report shall particularly state the manner in which notice was given to claimants.

The commissioners shall have power to try and decide upon all claims which, by law, survive against or in favor of executors or administrators, except claims for the possession or title of real estate, and may examine and allow all demands at their then present value, which may be payable at a future day, although such claims may be payable in specific articles, and may offset such demands in the same manner in favor of the estate.

Every person, having a claim against a deceased person proper to be allowed by the commissioners, who shall not, after publication of notice, as required in the second section of this chapter, exhibit his claim to the commissioners within the time limited by the court for that purpose, shall be forever barred from recovering such demand, or from pleading the same in offset to any action whatever.

When commissioners shall be appointed as provided in this chapter, for examining and allowing any claims against the estate, no action or suit shall be commenced or prosecuted against the executor or administrator, except actions of ejectment, or other actions to recover the seizin and possession of real estate, and actions of replevin; nor shall any attachment or execution be issued against the estate of the deceased, until the expiration of the time limited by the court for the payment of the debts.

Any executor, administrator or creditor may appeal from the decision and report of the commissioners to the next stated session of the county court, in the same county, if application be made for such appeal, in writing, filed in the register's office, at the time of returning the commissioner's report, or within twenty days after such return, in the following cases, viz.:

First, when the commissioners shall disallow any claim in favor of any creditor against the estate, in whole or in

part, to the amount of twenty dollars, the claimants may appeal.

Second, when the commissioners shall allow any claims, in whole or in part, and this sum being objected to, amounts to twenty dollars, the party against whom the claim shall be allowed may appeal.'

And the said Asa T. Barron further says that, at a hearing before the said commissioners, held in pursuance of notices duly given, to wit, on the 29th day of July, A. D. 1851, to wit, at Hartford aforesaid, the said Asa Taylor presented for examination and allowance a claim against the estate of the said Abel Barron for the sum of $3503, which claim the said Asa T. Barron avers, was on occasion of not performing the very same identical promises in said declaration mentioned, and which was then and there wholly disallowed by said commissioners.

And the said Asa T. Barron further avers that the said claim, so disallowed, was the very same claim reported by said commissioners as disallowed in their said report.

And the said Asa T. Barron further avers that the said Abel, last before his decease, resided within said district of Hartford, to wit, at Hartford, in said district, and at the time of his death, was the owner of estate in the State of Vermont, and within the said district of Hartford.

And the said Asa T. Barron further avers that, by the law of the said State of Vermont, a judgment or decision of commissioners, appointed by the probate court to receive and examine claims against an estate of a person deceased, is, unless appealed from in accordance with the provisions of the statute, a final judgment, and conclusive of the rights of the parties, and that by the matters and proceedings hereinbefore set forth, the said claim of the said plaintiff was finally and forever barred in the State of Vermont. Wherefore he prays judgment, if the said plaintiff ought further to have or maintain his said action against him, &c.

And for a further plea in this behalf, the said Asa T. Bar-

ron, by leave of the court here, for that purpose, first had and obtained, saith that he, the said Asa Taylor, ought not to be admitted further to say or allege that he, the said defendant, promised as the said Taylor in his declaration sets forth, because he says that, at a court of probate, held at Woodstock, within and for the district of Hartford, in the State of Vermont, &c.

(The remainder of the second plea is a verbatim transcript of the first, from the word Vermont in each, and concludes as follows :)

And this he is ready to verify; wherefore he prays judgment, if the said Taylor ought to be admitted, contrary to the said judgment and report of said commissioners, so accepted and become matter of record in said probate court, further to allege that the said Abel Barron promised, in manner and form as in his said declaration is set forth ; by his attorney, &c.

The plaintiff demurred generally to the first plea, and specially to the second, assigning for cause that there could be but one plea *puis darrien continuance*, and the defendant joined the issues of law, which are transferred to the superior court for decision.

*H. A. Bellows*, for the plaintiff.

The court of probate has no jurisdiction over claims against an insolvent estate in Vermont. But the claims are presented to commissioners, who are appointed to receive, examine and adjust all claims and demands against such estate.

They are to report the claims allowed and disallowed, to the judge of probate, but no judgment, in any sense, is rendered by him upon such report. The law provides for an appeal, but it is from the *decision* of the *commissioners*, not from the decree of the judge of probate. And the plea states, and states truly, that it is the judgment of probate. No judgment has been rendered by the court of probate in

this case.   And if there had been, it would have been of no validity, for want of jurisdiction.   *Hotchkiss* v. *Beade,* 10 Conn. 232.

If it be held that the necessity of making a report to the court of probate, in respect to the notice, implies that the judge may decide as to the validity of *that*, it does not imply that he has any power to try the merits of the claim. The judgment is still the judgment of the commissioners, and it is their report that is to be appealed from.

There has been, then, no judgment of any court of record upon the subject.   But the whole proceeding lacks essentially that character which should give it, as a judgment, full faith and credit in another State.

There are no pleadings whatever; the claims are not even described.   But they are presented informally, and in the report nothing is stated, but the amount allowed or disallowed.   If there was a judgment, the claim would be merged in it, and it would of course, as a judgment, be entitled to full faith and credit, before another commissioner, in another State.   It must be binding on both parties, or not upon either; but who ever has heard of an action of debt upon the judgment of such commissioners?

So far as regards the State where such proof is made, the matter is ended by drawing a dividend upon the claims so proved; but we contend that it has no extra-territorial effect whatever.   For the same claim may be proved in every State where administration is taken.   *Goodall* v. *Marshall,* 11 N. H. Rep. 88; *Loomis* v. *Farnum,* 14 N. H. Rep. 119. And it is believed that in no instance can it be shown that the claim has been produced as a judgment by the commissioners, in another State.

It is, in truth, an informal mode resorted to, for the application of an estate within the limits of the State granting the administration.   And it has no more the characteristics of a judgment of a court of record, than the authentication of a debt before a commissioner appointed under a bank-

rupt law. Was the court authorized to render a judgment on such report, as on the report by referees by our court of common pleas, it might be otherwise; but such is not the fact. This report of the commissioner is not in force out of the State, not even *prima facie* evidence. *Taylor* v. *Brown.*

See the subject of judgments in other States. *Warren* v. *Flagg,* 2 Pick. 448; *Phelps* v. *Rice,* 10 Met. 128, 132; *Chase* v. *Hathaway,* 14 Mass. 222, 226; *Robinson* v. *Prescott,* 6 N. H. Rep. 567; *Wilson* v. *Edmonds,* 4 Foster's Rep. 537.

*P. T. Washburne,* of Vermont, (with whom was *Cushing,*) for the defendant.

The demurrer to the first plea admits the existence, in the State of Vermont, of a probate court, as a court of record, with a seal and register, with jurisdiction over the estates of all deceased persons, testate or intestate, dying seized of estate within the State, with power to appoint commissioners, who shall have power to receive and adjust all claims against the estate, and shall report their doings to the probate court; that Abel Barron, the intestate, was a resident of Vermont, within the probate district of Hartford, and had estate within the said district, at the time of his decease; that the probate court for that district, having jurisdiction, granted letters of administration upon his estate, and appointed commissioners, in due course of law; that the plaintiff presented before the commissioners, and claimed allowance for the identical claim here sought to be recovered; that the commissioners disallowed the claim, and made due report of their decision to the probate court; that their report was accepted and recorded by the probate court, and no appeal was taken by the plaintiff; and that the report and decision of the commissioners, and the decree of the probate court thereon, are yet in full force.

The cases of *Mills* v. *Duryee,* 7 Cranch 481, and *Hamp-*

Taylor *v.* Barron.

*ton* v. *Mc Connell*, 3 Wheat. 234, have established the principle that the judgment of a State court, duly authenticated, has the same credit, validity and effect in every other State which it has in the State where it is rendered; and that in every such case, the only inquiry is, what is the effect of the judgment in the State where it was rendered?

If, then, the decision and report of the commissioners, and the decree of the probate court thereon, constitutes, in Vermont, a judgment of a court of record, capable of being duly authenticated, merging the original claim, and constituting there a bar to any further litigation in respect to the claim, the same effect must be given to it in New Hampshire.

The law of Vermont upon this subject is too well settled to admit of controversy. By the statute of 1821, (Slade's Stat. 352, §§ 8, 9,) the probate court were empowered to appoint commissioners only in case the estate was represented insolvent; but by the Revised Statutes of 1839, (and the law has ever since remained the same,) it was provided that all estates should be settled as insolvent estates, by the appointment of commissioners; and the power of the commissioners, the manner of their procedure, and the effect to be given to their decisions, are the same under both statutes; so that decisions under the statute of 1821, are equally applicable to the statute of 1839.

In *Bates* v. *Kimball*, 2 D. Chip. 77, the court held unconstitutional an act of the legislature, allowing an appeal from the decision of the commissioners upon a particular estate, after the time allowed by law for entering the appeal had elapsed, the court saying that the "determination" of the commissioners, "when approved by the probate court, becomes a debt of record, and is final between the parties, except in cases where an appeal is taken." And of the claim in that case, they say they find that it was "a final judgment of record between party and party, rendered by a board, and approved by a court of competent jurisdiction for that purpose."

In *Atherton* v. *Flagg*, 2 D. Chip. 65, which was an action of debt, brought upon an allowance by commissioners, the plea filed by the defendant was held insufficient, upon the ground, sustained by the court, that the allowance by the commissioners possessed " the character and attributes of a judgment debt."

In *Staniford* v. *Barry, Adm'r*, 1 Aik. 314, a balance had been reported by the commissioners, in favor of the estate, against the plaintiff, and the plaintiff claimed the right to appeal, after the expiration of the time fixed by law, by virtue of a special act of the legislature, as in *Bates* v. *Kimball*, 2 D. Chip. 77, and the court held, as in that case, the decision of the commissioners, unless appealed from within the time limited, " a final judgment which fixed the rights of the parties."

In *Executors of Doolittle* v. *Hunsden*, Brayt. 41, it was held that the report of commissioners, made in favor of the estate, for a balance on an adjustment of mutual claims, merges all the original claims, and no action can be sustained on them, but only for the balance.

In *Adm'r of Eames* v. *Pettes*, 4 Vt. 556, it was held that assumpsit could not be sustained to recover a sum found due by the commissioners upon an insolvent estate, but that the action must be debt.

In *Hodges, Ex'r* v. *Thatcher*, 23 Vt. 455, a question arose as to the extent of the power which the probate court possesses over the report of the commissioners, and the court, (*Redfield*, C. J.,) say, " It is the decision of the commissioners which is regarded as the adjudication; but it does not become such, in contemplation of law, until returned and accepted by the probate court, as the decision of the commissioners, and recorded as such." And, p. 463, " We consider that the probate court have nothing to do with the decision of the commissioners in regard to a particular claim. That rests exclusively with the commissioners, and their decision is conclusive, unless appealed from. But that

decision does not become a record *res adjudicata,* so to speak, until made a record of the probate court."

But the demurrer, in the case at bar, not only admits that the identical claim was disallowed by the commissioners, but that their report of the disallowance was returned to and accepted by the probate court, and ordered to be recorded, and profert is made of the record. It has, therefore, become a judgment of record in Vermont, of a court having a seal and register, and hence competent to authenticate a copy of the record, in the manner prescribed by the act of Congress. And if the decision is regarded as the judgment of the commissioners, and not of the probate court, yet, being recorded in the probate court, it has become a judgment of record, as held in *Bates* v. *Kimball,* capable of being authenticated, and therefore conclusive.

No distinction is made in these cases between the cases of the allowance and that of the disallowance of the claim. It is the decision upon the claim which constitutes the judgment. The statute requires a report to be made of the claims disallowed, as well as of those allowed. And when the report is accepted and recorded, no appeal being taken, the decision becomes a final judgment of record, which, in the language of the court, in *Staniford* v. *Barry,* fixes the rights of the parties. And such is the intimation of the court in *Goodall* v. *Marshall,* 14 N. H. Rep. 168.

It may be true, as assumed in the argument of the plaintiff, that an action of debt, upon the allowance of commissioners, is unknown in New Hampshire. But this is not true in Vermont, as the cases above cited demonstrate. And this arises from a manifest difference in the statutes of the two States. In Vermont, when a claim against an estate is presented for allowance by the commissioners, it is made the duty of the administrator to present, in offset, all claims in favor of the estate against the claimant, and the commissioners are required to adjust the claims so presented, and allow and report the balance. Hence it is not infre-

quent that a balance is allowed in favor of the estate, and for this balance an action lies. And the decisions repeatedly made, that this action must be debt, show conclusively that the decision of the commissioners is a judgment with all its incidents. And it would be idle to argue that there is a distinction, in degree, in the decisions of the commissioners; that their decisions, allowing a balance in favor of the estate, are, technically, judgments, while their decisions in favor of the creditor, and their decisions disallowing the creditor's claim, are merely informal modes resorted to for the application of the assets. But in New Hampshire, (Comp. Stat. ch. 171, § 9,) the commissioners are only allowed to consider the claims in favor of the estate as offsets, when there is a balance in favor of the creditor. It follows that the report of the commissioners, in New Hampshire, shows only balances against the estate, and hence there is no foundation for the assertion of a remedy in favor of the administrator, based upon the decision of the commissioners, to recover a claim in favor of the estate.

It is, undoubtedly, true that a creditor may commence concurrent actions against his debtor, in different States, for the recovery of his debt. And it may be that a recovery in favor of the creditor, in one of the suits, cannot be pleaded in bar of the other suits, without an averment of satisfaction. This is in analogy to the remedy allowed against the several parties to a bill. But if one of the suits so commenced be litigated, and result in a final judgment, upon the merits, in favor of the defendant, this judgment may be pleaded as a bar, *puis darrein continuance*, to the other suits. Otherwise it would result that a pretended creditor might litigate his claim as many different times as he could find different States, in which jurisdiction of the person or property could be obtained.

The administration in Vermont, in this case, being the principal administration, and that in New Hampshire merely ancillary, the reason of the thing would seem to be in ac-

cordance with the cases above cited from Vermont, that the plaintiff, having voluntarily submitted himself to the primary jurisdiction, is concluded by the result.

The case of *Goodall* v. *Marshall*, 11 N. H. Rep. 88, contains nothing inconsistent with this view. It merely gives the creditor the same right against the estate of the debtor, after his decease, which he would have had against him personally if living. But it does not assume to decide that a claim, once litigated and disallowed in one State, may be further prosecuted in another State. On the contrary, the case of *Hunt* v. *Fay*, 7 Vt. 170, is cited, certainly not with disapprobation, which held that the statute bar, under the law of New Hampshire, attaching, by reason of the omission of the creditor to present his claim in New Hampshire, was a conclusive bar in Vermont. And if this is sound law, and that is conclusive as a bar, in another State, which is the mere consequence of omission, *a fortiori*, should the bar be conclusive, which is the result of a direct litigation of the claim and a decision against the claimant.

Neither is the case of *Hotchkiss* v. *Beach*, 10 Conn. Rep. 232, an authority for the plaintiff. It is there held, as in Vermont, that it belongs exclusively to the commissioners to decide upon the claims against the estate. And in Connecticut, as in Vermont, the report of the commissioners must be made to, and accepted and recorded by the probate court, and their decision then becomes a judgment of record in that court. *Peck* v. *Sturgis*, 11 Conn. Rep. 422.

Neither is it a sufficient answer that there are no pleadings before the commissioners, and that the report does not show the nature of the claim presented. The name of the claimant, the amount of the claim and the decision are stated, and no more is left to be proved by parol, in respect to the identity of the claim, than in every case where the declaration is on book account, or in *indebitatus assumpsit* upon the money counts.

The probate court, in Vermont, may reject a report for

sufficient cause, and must accept and record it, before it be-
comes valid and final. *Hodges* v. *Thatcher*, 33 Vermont
Rep. 455. Similar powers are exercised by courts of com-
mon law jurisdiction, in respect to the verdicts of juries and
the reports of referees and auditors. They cannot revise
the decision, but their order of acceptance is essential, in
order to give full effect to the decision. This order of ac-
ceptance, in those courts, is a technical judgment. So in
the probate court, the decree of acceptance is the judgment,
and that becomes a judgment of record. This record re-
mains in the probate court, and when the decision of the
commissioners is reversed or modified by the appellate court,
upon appeal, their decision is returned, not to the commis-
sioners, but to the probate court, and that court make the
proper correction upon the list of claims, that is, upon the
record.

If when the plaintiff's claim was presented before the
commissioners in Vermont, the administrator there had pre-
sented a claim in offset, under the statute of Vermont, and
a balance had been allowed in favor of the estate, and no
appeal had been taken, a case would have been presented
precisely within the cases of *Bates* v. *Kimball*, *Ex'r.* of *Doo-
little* v. *Hunsden*, and *Adm'r. of Eames* v. *Pettes*, above
cited. And for that balance, under the authority of those
cases, the administrator might have commenced an action
of debt, against the defendant, in Vermont, and, of course,
in New Hampshire. It would not have varied either the
result or the principle, if the commissioners had arrived at
that balance by disallowing entirely the plaintiff's claim
and allowing the offset. But it would be a strange anom-
aly, if the administrator might have been pursuing an ac-
tion of debt upon that balance, thus attained in the courts
of New Hampshire, and yet the plaintiff be pursuing, at the
same time and in the same courts, his action upon his orig-
inal claim thus disallowed and merged.

The true principle is, that when the plaintiff submitted

himself to the jurisdiction of the courts of Vermont, he bound himself to abide the result of that submission, if adverse to his claim. He has selected his forum, and cannot complain. He has claimed the rights, and must submit to the disabilities, in this respect, of a citizen of Vermont. To hold otherwise would be to entirely disregard that salutary maxim, which is the foundation of the whole doctrine of the conclusive effect of judgments—*Interest reipublicœ ut sit finis litium.*

BELL, J. At common law, judgments rendered by courts in foreign countries are not held to be conclusive, but to furnish only *prima facie* evidence. The States of the Union, independently of the constitution of the United States, are, in this respect, held to be foreign to each other, their courts are foreign courts, and the judgments of those courts are foreign judgments. They have the weight of *prima facie* evidence merely. *Thurbur* v. *Blackburne*, 1 N. H. Rep. 242; *Robinson* v. *Prescott*, 4 N. H. Rep. 454; Greenl. Ev. §§ 545, 546; 2 Cow. & Hill's Ph. Ev. 98; *Buttrick* v. *Allen*, 8 Mass. Rep. 273.

But by the constitution of the United States, (Art iv, § 1,) it is provided that " full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," and that " Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof. And by the act of Congress of May 26, 1790, it was provided that the records and judicial proceedings of the courts of any State shall be proved or admitted, in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, as the case may be, that the said attestation is in due form. And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit

given to them in every court within the United States, as they have by law or usage in the courts of the State, from whence the said records are or shall be taken."

No distinction is made either by the constitution or law of Congress, between courts of record and those which are not such, nor between courts of the highest and most general jurisdiction, and those tribunals whose authority is of the most inferior and limited character. " All judicial proceedings," is broad enough to include the judgments of the most inferior and most transient tribunals, and the decisions of the commissioners of an insolvent estate, if they are judgments, must be clearly included.

But to make any judicial proceeding conclusive, without the State where it was had, by force of the law of the United States, there must be such an authentication as is required by that law. Otherwise its effect must be entirely regulated by the principles of the common law.

In the case of *Robinson* v. *Prescott*, 4 N. H. Rep. 450, it was decided that these provisions of the law of the United States did not apply to the case of judgments rendered by justices of the peace, because from the nature of the tribunal they do not admit of authentication in the mode prescribed, and, consequently, the judgments of such a court, not coming within the scope of that law, could have no greater force than a foreign judgment at common law, and the merits of the original demand were still open for examination. *Mahurin* v. *Bickford*, 6 N. H. Rep. 567 ; *Warren* v. *Flagg*, 2 Pick. 448.

Though decisions have been made, in some of the States, that the conclusive effect of a judgment of another State does not depend upon the mode in which it is authenticated, (see 4 Cow. & Hill's Ph. Ev. 102, 316, &c.,) yet the law must be regarded as settled otherwise in this State. And this seems to us to be the reasonable view of the question. It was natural that the National Legislature should be of the opinion that there might be tribunals, in some of

the States, of such limited powers, that it would be proper to leave their decisions to be dealt with at common law. And the fair construction of the act of Congress seems to us to make precisely that exception. It prescribes a mode of proof which implies that there must be a clerk and a judge, chief justice or presiding magistrate, while it must have been well known that justices of the peace, and many other inferior tribunals have no clerk, and many public boards, exercising judicial powers, have no officer that can, with any propriety, be denominated a judge or presiding magistrate. The omission to provide for cases of these classes, it seems, must have been intentional. And when the act provides that the records and judicial proceedings, *authenticated as aforesaid*, shall have faith, &c., it evidently designs to omit and leave unprovided for, the proceedings of such courts as did not admit of such authentication.

The defendant here has to maintain that the decision of the commissioners set up in his plea, is of itself of the nature of a judgment, and that it is capable of authentication agreeably to the law of the United States.

Until our attention was turned to this case, we supposed we had a clear idea of these proceedings in the probate courts in relation to claims against the estate. We regarded them as merely preparatory steps in order to a decree, that the assets in the hands of the administrator should be ratably distributed among the creditors of the estate, in proportion to the amount of their respective claims; proceedings merely of an interlocutory character.

It is, as we suppose, a familiar thing in England, to apply to the court of chancery in many cases, to administer the assets of an estate. In such cases that court refers to the master, to inquire and report a list of the creditors and of their claims, and an account of the assets, and upon his report a decree of the court is passed for an equal distribution. 1 Story Eq. Jur. ch. 9, § 530; Bennett's Ch. Pr. 47; Eq. Draft. 124. Such we supposed the nature of the stat-

Taylor *v.* Barron.

ute proceeding in the probate courts. Upon a representation here that the estate is insufficient to pay the debts in full, the court decree the estate to be administered as an insolvent estate. To ascertain who are the creditors, and the amount of their claims, commissioners are appointed to receive and audit the claims, and make a report of them to the court; upon which the balance of the assets being first determined by a settlement of the administration account, a decree of distribution is made among the creditors. The whole affair of the appointment of commissioners is but a means to this end of an equal distribution of the estate. The report of the commissioners, like the report of the master in chancery, is but an interlocutory proceeding; it is not a judgment, nor anything like a judgment. It is a report upon which a decree is to be made by the court. It is like the report of a committee to make partition, not of itself a judgment, but a decision, which derives its effect as a bar, or as conclusive upon the rights of parties wholly from the judgment, that the division of the committee be established.

The only foundation for the idea that the report is a judgment, is the provision for an appeal, as it is called; the idea being that there can be no appeal unless from a judgment. But it is obvious that this so called appeal is not an appeal in the ordinary sense of that term. The word is used with a meaning substantially different. It is, in fact, a mere claim for a trial by jury, and the course of proceedings by filing a declaration, pleading, &c., shows the entire want of resemblance to the ordinary appeal from a judgment. There are other cases where the word appeal is used in this loose sense; such as appeals from the award of damages by the road commissioners, (Comp. Stat. ch. 140, § 8,) where the appeal is in no sense from a judgment, and the object of the proceeding is, as it is here, to obtain a trial by jury. It is therefore not to be inferred that a report is a judgment, because there is an appeal of this sort.

The peculiarities which exist in Vermont in relation to

this proceeding would not seem to us to change its nature. It is there the almost uniform mode of settling estates, and no representation of insolvency is required. This seems to be immaterial; the object in view is in no material respect changed; the decree to divide the assets, ratably or in full, is still the object of the proceeding.

The fact that the commissioners are empowered to report balances due the estate, and that the courts there regard such reports as in the nature of judgments, in no respect necessarily changes the nature of the proceedings in relation to claims against the estate. These are reported to form the basis of the decree of distribution, but there is nothing to be done in that court with the report of claims found in favor of the estate, unless it be merely to accept the report. Such an acceptance, the court, in *Hodges* v. *Thatcher*, 23 Vt. (8 Wash.) 455, seem to regard as essential, and we should judge by analogy, that this acceptance by the court of probate is the judgment which gives its force to the report, but it is not necessary to consider this point. The effect of these suggestions, if we are right in them, would be, that the only judgment rendered in proceedings of this character is the decree of distribution by the court of probate. Such a decree would be, from its nature, confined to the assets found in the hands of the administrator, and could have no force or application to estates found elsewhere.

If, however, we were to assume that the decree which establishes the report of the commissioners is the decree of acceptance, as in the case of reports in favor of the estate, it would not change the result in this case, since in that case it would be the decree, and not the report of the commissioners, which would constitute the judgment. In the argument of the defendant's counsel, we understand the point contended for is, not that the decision of the commissioners is alone a judgment capable of authentication in conformity to the statute of the United States, but that the decision

and report of the commissioners, and the decree of the probate court thereon, constitute, in Vermont, a judgment of a court of record capable of being duly authenticated, &c.

This, however, is not the case made by the plea. The laws of other States are facts to be averred and proved. Courts here do not *ex officio* take notice of them, and consequently, when they are stated in pleading by one party, and they are not denied, but are admitted to be as they are stated by a demurrer, the court examine no further. From the statement of the law of Vermont, as made in the plea, it appears that the commissioners act under oath, and are authorized to administer oaths to parties and witnesses, when the same shall be required or proper, in the investigation and trial of questions before them. They are to try and decide upon all claims which by law survive against or in favor of executors and administrators, &c., and at the close of the time allowed them, they are to report to the probate court their doings, and a list of all claims presented or exhibited in off-set, stating how much was allowed and how much disallowed, together with the final balance, &c. Appeals are allowed in certain cases, including those like the present, from the decision and report of the commissioners, and it is averred that by the Vermont law, a judgment or decision of such commissioners is, unless appealed from, a final judgment, and conclusive of the rights of the parties, and that by the proceedings set forth in the plea, the claim of the plaintiff was finally barred in the State of Vermont.

From some of the allegations of the plea we should perhaps be warranted in entertaining a doubt whether the law of Vermont is quite fully stated. It is alleged, after stating the report of the commissioners, disallowing the claim of the plaintiff, that " said report was by said court duly accepted and ordered to be recorded, all which by the records now remaining in said court fully appears," &c. What is the effect of the acceptance here spoken of by the laws of

Taylor *v.* Barron.

Vermont, or whether it has any effect, does not appear by any allegation of the plea.

In our courts, reports are made by masters in chancery, auditors, referees, commissioners, and committees of various kinds, which have few if any of the qualities of judgments, and constitute, like the verdicts of juries, merely the bases of judgments rendered by the courts by whom such committees were appointed, or by whom the cases were referred to them. In all such cases the judgment, if pleaded, is alleged as the judgment of the court to which the report is made.

It seems to be considered in some of the Vermont decisions, to which we are referred, that the allowance or disallowance of claims against estates must be regarded as the judgment of the commissioners, because the probate courts have nothing to do with the decisions of the commissioners in regard to particular claims. That, it is considered, rests exclusively with the commissioners, and their decision is final, unless appealed from. But it is true here in all the cases to which reference is made, or nearly all, that the court to which a report is made has nothing to do with the decision of the matter referred, except to consider whether the referees or committees have performed their duty in conformity with the rules of law. They do not re-try the matters referred to others, nor re-examine into the merits of the decisions, and yet in each case the report, like a verdict, is an interlocutory matter, and binding upon nobody, until a judgment is rendered upon it by the court to which it is returned. Such seems to us to be the result to which the supreme court of Vermont arrive in the case of *Hodges* v. *Thatcher*, before cited ; where it is said that the fact that in some of these cases, of boards of triers, appointed by different courts, the decision of the board is final, and in others it is more or less subject to the revision of the court to which it is to be returned, and by which it is to be accepted and recorded, makes no difference in regard to the necessity of having the

Taylor *v.* Barron.

report in all cases accepted and recorded by the court to which it is returned.

No question need be made upon the point made in the argument, that a judgment of a court of probate, assuming it to be a tribunal like our own, whether upon the report of commissioners or upon any other subject which appears to be within their jurisdiction, is a judicial proceeding capable of authentication, and consequently as conclusive elsewhere as in that State, upon the rights of parties to it, as a *res judicata.* But in the plea, from which alone we are to derive our knowledge of the law of Vermont, it is stated that by that law a judgment or decision of commissioners, &c., is, unless appealed from, &c., a final judgment, and conclusive of the rights of the parties, without any reference to any action whatever of the probate court; and it is not alleged that by that law the court of probate has any jurisdiction whatever to make any order in relation to the report, not even to file it and place it among their records, and we must therefore take it that by the law of that State, all which it is alleged was done in and by the probate court was without authority of law, and consequently superfluous and idle. The judgment of the commissioners standing alone cannot be authenticated; and if such a decision has found its way into the probate court, however properly, an authentication of the probate record is not an authentication of the commissioners' proceedings, such as the statute requires.

In the case of *Goodall* v. *Marshall,* 14 N. H. Rep. 161, it was decided by this court that where a party, being a citizen of this State, presented a claim to the commissioners of an insolvent estate in Vermont, where the intestate resided, and the administrator having appealed from the commissioners' decree allowing the same, the case was tried on its merits, and judgment finally rendered in the supreme court of that State in favor of the administrator, that judgment constitutes a good defence [for another administrator appointed in this State,] to the same claim by the same party, and an

ancillary administrator here may plead such judgment in bar of its allowance. In delivering the opinion of the court, the learned chief justice incidentally remarked : " Perhaps had there been no further proceedings than the presentation of the claim to the commissioner in Vermont, and its disallowance by him, those facts would not have constituted a bar to its allowance here ; but even that might well be doubted, and should the question arise, it will require consideration. The judgment of an inferior tribunal having jurisdiction of the controversy, acquiesced in by the losing party even negatively, as by not claiming an appeal, review or the like, is in general certainly conclusive."

We have not thought it necessary to express any opinion upon the question thus left undecided in this case, because the plea fails entirely to state the facts necessary to bring the case within this decision, if the judgment of the commissioners were held as conclusive as that of the supreme court. It is not to be assumed that the judgment of any tribunal, even in a case where it has jurisdiction, is, of course, conclusive. To have that effect, they must be decisions upon the merits. *King* v. *Chase*, 15 N. H. Rep. 1. A judgment upon a nonsuit, or upon points of pleading, or the course of proceeding, is conclusive only in that case, and as to that point. *Demeritt* v. *Lyford*, 7 Foster's Rep. 541. The doctrine of the case of *Goodall* v. *Marshall* goes no farther than that if it appears that the case was tried upon the merits, that is, as we suppose, upon points which affect the validity of the claim everywhere, in this jurisdiction, as well as in the State where the trial occurred, it may be pleaded in bar. That is not alleged to be the case in this instance. All that is stated is, that " said Asa Taylor presented for examination and allowance a claim against the estate of the said Abel Barron for the sum of $3,503," averred to be the same claim as that declared upon here, " which claim was then and there wholly disallowed by said commissioners." It is not stated on what ground the claim was disallowed. It

does not appear that it was tried or decided upon its merits, or that it was tried at all. For ought that appears, the disallowance may have been upon a want of prosecution in the nature of a nonsuit, in which case a judgment between the same parties at common law would not be conclusive. *Holton* v. *Gleason*, 6 Foster's Rep. 501. Or it might have been upon some peculiar rule of the law of Vermont. To make the plea effectual as a bar, it must appear that there has been an adjudication sustaining a defence to the claim, which is in its nature equally a defence here. That is not alleged in this plea.

It is objected specially, that two pleas, *puis darrein continuance,* cannot be filed, but the point is not insisted upon in argument, and we do not discover any foundation for the position. Several pleas in bar of matters arising since the continuance, may well be pleaded together.

*Judgment on demurrer for the plaintiff.*